IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KEVIN E. SIERRA-LOPEZ,

        Plaintiff,          OPINION AND ORDER

  v.
                  19-cv-020-wmc

ANGELA MINK, *et al.*,

        Defendants.

*Pro se* plaintiff Kevin E. Sierra-Lopez filed this lawsuit against seventeen defendants, most of whom are employees of the Wisconsin Department of Corrections ("DOC"), employed at the Wisconsin Secure Program Facility ("WSPF"). On June 13, 2019, Sierra-Lopez filed a proposed amended complaint. (Dkt. #24.) While normally at this stage the court would screen his amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, his amended complaint, outlining two unrelated groups of claims and defendants, violates Federal Rule of Civil Procedure 20. Accordingly, Sierra-Lopez will be required to choose which lawsuit he would like to proceed on under this case number, and indicate whether he wishes to open another lawsuit to pursue his other claims.

ALLEGATIONS OF FACT

Plaintiff Kevin Sierra-Lopez was incarcerated at WSPF during the time when his claims arose. He names 17 defendants, who were either WSPF or DOC employees during the relevant time period. They are: Angela Mink, Mary Taylor, Correctional Officer Eck, Craig Tom, Michael Kemerling, Daryl Flannery, Scott Rubin-Asch, Stacey Hoem, Jaeger, Cathy Jess, Gary Boughton, Catherine Knuteson, Lacey Dickman, P. Fredrich, William

Brown, Lebbeus Brown, and Ellen Ray.

**I.      July 30, 2018, Attempt at Self-Harm**

On July 30, 2018, Sierra-Lopez reported to several correctional officers that he was having serious problems with his depression which were making him feel unstable.  Those officers reported his symptoms to Mink, who responded that Sierra-Lopez should write his problems in a Psychological Service Request ("PSR").  This response worsened his condition, causing Sierra-Lopez to overdose on pills.  While he was taken to Gunderson-Boscobe Hospital, apparently no one from WSPF informed the correctional officers handling his transport, or any personnel at the hospital, that Sierra-Lopez was having mental health problems or that he should be observed to prevent another incident of self-harm.  As a result, defendants Taylor and Eck allowed Sierra-Lopez to bite his I.V. out of his arm in a second effort to harm himself.

When Sierra-Lopez was returned to WSPF, neither Taylor, Eck nor Craig Tom (the supervising officer at WSPF at the time) notified any mental health staff at WSPF that he had tried to harm himself again.  Sierra-Lopez claims that Kemerling, a nurse, and Flannery, a supervisor, also knew about the self-harm incident but failed to inform PSU staff as well.

While Sierra-Lopez is vague about what happened next, but it appears he received a conduct report for the events that took place on July 30, 2018, charging him with acting out for attention.  Allegedly to ensure that Sierra-Lopez was found guilty of the charges, on August 3, 2018, a PSU staff member, Stacey Hoem, completed a report omitting Sierra-

2

Lopez's self harm incidents, and on September 6, 2018, Mink and Rubin-Asch "fabricated" Sierra-Lopez's mental health observation report by failing to include all of his self-harm attempts. On September 18, 2018, a disciplinary hearing was held to determine whether Sierra-Lopez was genuinely suffering from mental health problems on July 30. He claims that he not afforded an unbiased decision-maker as a result of several defendants' false reports leading up to the hearing, and he was found guilty and punished with 120 days in segregation, restitution requiring him to pay the costs associated with his hospital visit, and security restrictions on his prescription pills.

Sierra-Lopez appealed, but Jaeger affirmed the determination from the disciplinary hearing, even though Jaeger allegedly knew about Hoem's misrepresentations in her report. Relatedly, Sierra-Lopez claims that his more limited access to his pain medication -- he could only receive it every five hours during the first and second shifts of the day, rather than possessing his pain medication in his cell -- amounted to cruel and unusual punishment because he was unable to take pain medication as needed.

Sierra-Lopez claims that Jess, the DOC Secretary at the time, and Warden Boughton were responsible for the policies that allowed these constitutional violations to take place. In particular, he claims that they both were aware of his complaints about Mink, Taylor, Eck, Tom, Kemerling, Rubin-Asch, Hoem and Jaeger, but failed to intervene. Finally, Sierra-Lopez claims that on January 9, 2019, defendant Knuteson, the director of the Bureau of Offender Classification and Movement, ignored his serious mental health needs by failing to require that he be evaluated. He also claims that Knuteson gave him false instructions related to how he should exhaust his administrative remedies related to

his claims, apparently to shield DOC employees from liability.

## II. 2019 Confiscation of Legal Materials

Sierra-Lopez also challenges prison policies related to prisoner legal correspondence, which is allegedly tied to Jess's 2012 decision to require prisoners to use the U.S. postal service to send correspondence to other DOC prisoners. The details about what Jess actually did are unclear, but he alleges that in 2019, wardens at maximum security prisons were given the power to "do whatever they want" with prisoner legal correspondence, which led WSPF to treat prisoners in general population more favorable than prisoners in segregation. Specifically, while prisoners in general population were allowed to exchange legal correspondence during law library and recreation periods, prisoners in segregation, who do not have access to either the library or recreation, had no method of exchanging correspondence besides paying for mail.

Sierra-Lopez claims that this policy led to the destruction of his legal materials related to pending litigation in early 2019. Specifically, on February 15, 2019, a jailhouse lawyer's cell was searched, and Sierra-Lopez's legal materials were confiscated, apparently because Sierra-Lopez did not use authorized channels to send the jailhouse lawyer his materials. Sierra-Lopez claims that Fredrich, a property officer, and Dickman, who recorded the cell search, both failed to properly classify his materials as legal correspondence, thus allowing them to be destroyed. Sierra-Lopez claims that Boughton failed to implement policies that would prevent this type of abuse and harassment, and that Unit Manager Lebbeus Brown and Sergeant Ward were involved in the plot to

implicate the jailhouse lawyer. Finally, he claims that William Brown, an institution complaint examiner, failed to correct their wrong-doing in denying his complaint about the confiscation on March 12, 2019, as did Ellen Ray, when she reviewed his complaint on April 4, 2019.

OPINION

Under Rule 20 of the Federal Rules of Civil Procedure, a plaintiff may join claims together in one lawsuit if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). As the Court of the Appeals for the Seventh Circuit has stated, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012). If a complaint includes unrelated claims against different defendants in violation of Rule 20, a court may order that the lawsuit be severed. *Lee v. Cook Cty., Illinois*, 635 F.3d 969, 971 (7th Cir. 2011); *In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d 439, 441 (7th Cir. 2004); *Aiello v. Kingston*, 947 F.2d 834, 835 (7th Cir. 1991). Although Federal Rule of Civil Procedure 18 allows a party to join unrelated claims against defendants in a single suit, this rule applies only after Rule 20's requirements for joinder of parties have been satisfied. *Intercon Research Ass'n, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983). This means that the core set of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those same defendants under Rule 18. Fed. R. Civ. P. 18(a).

Applying Rules 18 and 20, plaintiff's allegations can be grouped into at least two

different lawsuits:

> **Lawsuit 1:  Plaintiff's claims related to the July 30, 2018, incident of self-harm, his related conduct report proceedings, and his inability to keep certain medications in his cell.**

> **Lawsuit 2:  Plaintiff's challenge to the destruction of his legal materials in 2019.**

These two lawsuits not only involve two completely unrelated series of events, they also

involve unrelated defendants.  While plaintiff may believe that these two lawsuits are

related because he includes Jess and Boughton as defendants to all of his claims, his

allegations related to his legal materials are insufficient to state a claim against them.

Supervisors may be liable under 42 U.S.C. § 1983 only if they are "personally responsible

for the deprivation of the constitutional right." *Chavez v. Illinois State Police*, 251 F.3d 612,

651 (7th Cir. 2001) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Plaintiff's allegations do not suggest any basis for holding these supervisory officials

responsible for alleged constitutional violations that form the basis of his claims.[1]

Because plaintiff's amended complaint violates Rule 20, the court will direct

plaintiff to respond to this order explaining how he wishes to proceed on his claims.

Plaintiff may proceed on only *one* of the identified lawsuits under this case number.  If he

wishes to pursue the other lawsuit identified above, he must do so by filing a separate

complaint related to those claims, which will be assigned a new and distinct case number.

---

[1] At most, plaintiffs' allegations suggest that Jess and Boughton were responsible for the policy requiring inmates housed in segregation to mail legal documents to other inmates, but he does not allege that either defendant was involved in the confiscation or destruction of his legal materials.

Plaintiff will be required to pay a separate filing fee for any additional lawsuit on which he chooses to proceed.

Since it is not clear at this time which of his lawsuits plaintiff will pursue, he should be aware that the court has not reached any opinion about the merits of any claims raised in the lawsuits outlined above. Once plaintiff identifies the suit he wants to litigate under this case number, the court will screen it as required by §§ 1915(e)(2), 1915A. If plaintiff disagrees with the way the court grouped his claims, or if he believes the court has left out claims he intended to assert, he may also raise those objections in his response, provided that he still complies with this order and chooses which lawsuit he wants to pursue. If he fails to do this, the court will have no choice but to dismiss all of his claims for failure to prosecute this case.

ORDER

IT IS ORDERED that:

1) Plaintiff Kevin E. Sierra-Lopez has until **October 25, 2019,** to identify for the court which one of the lawsuits identified in this opinion he wishes to pursue under the case number assigned to his complaint.

2) No later than **October 25, 2019,** plaintiff must also inform the court whether he wishes to continue to prosecute his other claims as a separate lawsuit or withdraw it voluntarily. If plaintiff dismisses those other claims voluntarily, he will owe no further filing fee. If plaintiff advises the court he intends to prosecute his other lawsuit separately, he will (1) owe a separate $350 filing fee for each new lawsuit and (2) need to file a separate complaint setting forth his claims in that lawsuit.

3) If plaintiff fails to respond to this order by **November 1, 2019**, then the clerk is directed to enter an order dismissing without prejudice the entire lawsuit based on plaintiff's failure to prosecute it.

Entered this 11th day of October, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge